UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

MIRELA HINTERMAIER,

             Plaintiff,

    -against-

EQUIFAX INFORMATION SERVICES,
LL, EXPERIAN INFORMATION
SOLUTIONS, INC., TRANSUNION, LLC,

             Defendants.

-------------------------------------------------------- X

Case No. 1:24-cv-09697-ALC-RFT

**EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES**

Equifax Information Services LLC ("Equifax"), by and through its attorneys and pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, hereby answers Plaintiff's Second Amended Complaint and asserts its affirmative and other defenses as follows:

## PRELIMINARY STATEMENT

In answering the Complaint, Equifax states that it is responding to allegations on behalf of itself only, even where the allegations pertain to alleged conduct by all Defendants. Equifax denies any and all allegations in the headings and/or unnumbered paragraphs in the Complaint.

## ANSWER

In response to the specific allegations in the enumerated paragraphs in the Complaint, Equifax responds as follows:

## I.  PRELIMINARY STATEMENT

### COMPLAINT ¶1.1:

Plaintiff Mirela Hintermaier ("Plaintiff") brings this action under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq., against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("TransUnion") (collectively, "Defendants"), each a consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

**ANSWER:**

Equifax admits that Plaintiff purports to bring an action pursuant to the Fair Credit Reporting Act ("FCRA"), but Equifax denies that it violated the law and further denies that Plaintiff is entitled to any relief whatsoever from Equifax. Equifax further admits that some of its business activities make it a "consumer reporting agency" under the FCRA as to those activities, only. Equifax denies the remaining allegations in this paragraph. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶1.2:**

Although this action names three defendants, the claims against each defendant arise from that defendant's own independent conduct—its own reporting practices, its own reinvestigation procedures, and its own response to Plaintiff's disputes. The liability of each defendant is separate, independent, and not contingent upon the conduct of any other defendant.

**ANSWER:**

Equifax admits that Plaintiff purports to make such allegations. Equifax denies that it violated the FCRA or any other law, denies it is liable to Plaintiff, and denies any remaining allegations in this paragraph.

**COMPLAINT ¶1.3:**

This case presents a materially different and stronger theory of liability than that addressed in the Court's January 12, 2026 dismissal order. The First Amended Complaint relied primarily on the theory that reporting discharged debts with historical delinquency data was misleading. This Second Amended Complaint pleads specific, affirmative misrepresentations on the face of each defendant's consumer reports that created the false impression of active, currently-collectible debt obligations—inaccuracies that are materially misleading under Shimon v. Equifax Info. Servs. LLC, 994 F.3d 88, 92 (2d Cir. 2021). A consumer report is inaccurate not only when it contains false data but also when it is "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 148 (4th Cir. 2008). The Third Circuit has specifically held that reporting student loan accounts with derogatory status notations on accounts that carry zero legal obligation creates a materially misleading impression under the "reasonable reader" standard. Bibbs v. Trans Union LLC, 43 F.4th 331, 342 (3d Cir. 2022). Plaintiff's facts are stronger than Bibbs: here, the accounts were not merely missing a discharge notation but were affirmatively reported as current active obligations with growing balances and forward-looking payment dates—a far more misleading presentation to any creditor reading the file.

2

323918740v.1

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.4:**

As to Experian: after Plaintiff's student loan obligations were discharged by court order on August 27, 2024, Experian's consumer reports continued to show those accounts as "Open/Never late. Deferred, payments begin Jan 2025"—a present-tense, forward-looking statement that future monthly payments would begin in January 2025, on obligations that had been legally extinguished. Experian's inaccurate reporting caused one documented credit denial: on September 30, 2024, LendingClub Patient Solutions/Comenity Capital Bank denied Plaintiff's medical financing application based on Experian data and a credit score of 565, citing "balances on open accounts too high", "insufficient number of on time payments on your accounts" and "amount paid down on open installment accounts too low. The denial is confirmed by documentary evidence expressly identifying Experian as the reporting agency.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.5:**

As to Trans Union: after Plaintiff's student loan obligations were discharged by court order on August 27, 2024, Trans Union's consumer reports continued to show those accounts with Pay Status "Current; Paid or Paying as Agreed," Terms "$0 per month; Deferred," and the notation "Payment deferred until 01/18/2025"—a forward-looking statement that future payment obligations would resume in January 2025, on debts that had been legally extinguished. Trans Union's inaccurate reporting caused at least four documented credit denials. All loan applications were submitted on September 30, 2024; denial letters were received in October 2024. All four denial letters expressly identify Trans Union as the reporting agency: (1) Customers Bank/Proceed Finance dated October 1, 2024, score 670, citing "Serious delinquency, and public record or collection filed", "Portion of loan balances to loan amounts is too high", and "Too many accounts with balances"; (2) Prosper/WebBank dated September 30, 2024, score 649, citing "Too many trades reported 30 or more days delinquent in the last 24 months", "Too many accounts with balances", "Portion of loan balances too loan amounts is too high", and "Time since derogatory public record or collection is too short"; (3) Upgrade, Inc. dated October 1, 2024, score 670, citing

3

"Serious delinquency, and public record or collection filed", "Portion of loan balances too loan amounts is too high", and "Too many accounts with balances"; and (4) LendingClub Bank dated October 11, 2024, score 649, citing "Serious delinquency, and public record or collection filed", "Portion of loan balances to loan amounts is too high" and "Too many accounts with balances." Notably, three of these four denials do not reference bankruptcy at all — they cite adverse factors that are direct and independent consequences of Trans Union's inaccurate reporting of discharged student loan accounts as active obligations with large outstanding balances, not consequences of the bankruptcy notation itself. Trans Union has additionally denied Plaintiff access to her online credit report and has failed to provide a hard copy of her consumer file despite requests in January 2026 and February 2026.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.6:**

As to Equifax: after Plaintiff's student loan obligations were discharged by court order on August 27, 2024, Equifax's consumer reports continued to show those accounts as active education loans with Status "Pays As Agreed" and Deferred Pay Start Dates of 12/01/2025—a forward-looking statement that future payments would resume December 1, 2025, on legally extinguished debts. When Equifax conducted its reinvestigation following Plaintiff's dispute, it did not correct the discharged status; instead, it merely updated account balances and extended the deferred payment start date to 12/01/2025—actively refreshing and extending the misrepresentation of active loan obligations. Equifax simultaneously updated Discover Bank's account to show "Account Included in Bankruptcy," demonstrating full awareness of the correct reporting treatment while selectively refusing to apply it to student loan accounts.

**ANSWER:**

Equifax admits that Plaintiff purports to make such allegations. Equifax denies that it violated the FCRA or any other law, denies it is liable to Plaintiff, and denies any remaining allegations in this paragraph.

**COMPLAINT ¶1.7:**

The FCRA requires CRAs to follow reasonable procedures to assure maximum possible accuracy of consumer reports, to conduct reasonable reinvestigations when a consumer disputes information, and to provide consumers with access to their files upon request. 15 U.S.C. §§ 1681e(b), 1681i(a), 1681g. Each defendant had independent obligations under these provisions and independently failed to meet them.

323918740v.1

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶1.8:**

After Plaintiff provided each defendant with certified copies of the applicable discharge orders, each defendant nonetheless continued to publish inaccurate information, independently supporting an inference of reckless disregard for statutory duties under Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Equifax denies the remaining allegations in this paragraph.

## II. JURISDICTION AND VENUE

**COMPLAINT ¶1.9:**

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

**ANSWER:**

To the extent Plaintiff has properly alleged the claims herein, Equifax admits that this Court may exercise its subject matter jurisdiction.

**COMPLAINT ¶1.10:**

Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in the Southern District of New York, consumer reports were used in credit decisions affecting Plaintiff in this District, and Plaintiff's disputes were sent from this District.

**ANSWER:**

Equifax admits that the Plaintiff has alleged venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2). Equifax states that this is a legal conclusion which is not subject to denial or admission.

### III. PARTIES

**COMPLAINT ¶1.11:**

Plaintiff Mirela Hintermaier is a natural person residing in New York, New York, and is a "consumer" within the meaning of 15 U.S.C. § 1681a(c).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein, except admits, upon information and belief, that Plaintiff is a natural person and qualifies as a "consumer" under the FCRA.

**COMPLAINT ¶1.12:**

Defendant Equifax Information Services, LLC is a limited liability company organized under the laws of Georgia, with its principal place of business in Atlanta, Georgia. Equifax is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f) and regularly conducts business in this District. Equifax independently maintained, reported, and reinvestigated Plaintiff's consumer file, and its liability is assessed independently of the other defendants.

**ANSWER:**

Equifax admits that it is a Georgia limited liability company that maintains its principal address in Atlanta, Georgia. Equifax also admits that some of its business activities make it a "consumer reporting agency" under the FCRA as to those activities only. Equifax further admits that it is registered to do business in the State of New York. Equifax denies the remaining allegations in this paragraph.

323918740v.1

**COMPLAINT ¶1.13:**

Defendant Experian Information Solutions, Inc. is a corporation organized under the laws of Ohio, with its principal place of business in Costa Mesa, California. Experian is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f) and regularly conducts business in this District. Experian independently maintained, reported, and reinvestigated Plaintiff's consumer file, and its liability is assessed independently of the other defendants.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.14:**

Defendant Trans Union, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Chicago, Illinois. Trans Union is a consumer reporting agency within the meaning of 15 U.S.C. § 1681a(f) and regularly conducts business in this District. Trans Union independently maintained, reported, and reinvestigated Plaintiff's consumer file, and its liability is assessed independently of the other defendants.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

## IV. FACTUAL ALLEGATIONS

### A. The Bankruptcy Discharge

**COMPLAINT ¶1.15:**

On December 1, 2023, Plaintiff filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

**COMPLAINT ¶1.16:**

On March 27, 2024, the Bankruptcy Court entered an Order of Discharge (the "General Discharge Order") releasing Plaintiff from all dischargeable debts pursuant to 11 U.S.C. § 727. A true and correct copy of the General Discharge Order is attached hereto as Exhibit A.

**ANSWER:**

The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶1.17:**

On August 27, 2024, the Bankruptcy Court entered a Stipulation and Order of Dismissal specifically discharging Plaintiff's federal and private student loan obligations (the "Student Loan Discharge Order"). A true and correct copy of the Student Loan Discharge Order is attached hereto as Exhibit B.

**ANSWER:**

The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶1.18:**

Notice of both discharge orders was provided through the Bankruptcy Court's electronic noticing system (the "BNC") to all creditors and parties in interest, including the servicers of Plaintiff's student loans—the U.S. Department of Education and Nelnet, Inc. Upon information and belief, those servicers are furnishers of information to each Defendant and were on notice of the discharge as of August 27, 2024.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.19:**

Following entry of these orders, the discharged debts were no longer legally due or collectible. Any representation that such debts carry a present balance, require future payments, or constitute active obligations is legally and factually inaccurate.

323918740v.1

**ANSWER:**

Equifax states that this paragraph contains legal conclusions not subject to admission or denial. If further response is required, Equifax states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained therein and, on that basis, denies, generally and specifically, each and every allegation contained therein.

**B. Industry Reporting Standards**

**COMPLAINT ¶1.20:**

The Consumer Data Industry Association ("CDIA") publishes the "Metro 2®" format, which reflects industry-standard practices for reporting account information. Under Metro 2® standards, accounts included in a Chapter 7 discharge are to be reported with a Special Comment Code "BK" (or equivalent), a zero balance, and no delinquency status.

**ANSWER:**

Equifax states that the agency publication referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the agency publication referenced by this paragraph.

**COMPLAINT ¶1.21:**

Reporting a discharged debt as open, as carrying an active balance, or as requiring future payments is inconsistent with Metro 2® industry practices and creates a materially misleading impression. See Shimon, 994 F.3d at 92; Saunders, 526 F.3d at 148 (information is inaccurate when it creates a "materially misleading impression" likely to adversely affect credit decisions); Bibbs, 43 F.4th at 342 (applying reasonable reader standard to find student loan reporting materially misleading). Each Defendant is independently a participant in the CDIA and has independently adopted Metro 2® reporting standards. Each Defendant's independent deviation from those standards in Plaintiff's case independently supports an inference of reckless disregard for FCRA obligations.

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or

9

takes out of context the contents of the case law referenced by this paragraph. Equifax denies the

remaining allegations in this paragraph.

**DEFENDANT-SPECIFIC ALLEGATIONS:**
**EXPERIAN INFORMATION SOLUTIONS, INC.**

## C. Experian's Materially Misleading Reporting of Student Loans as Active Obligations

**COMPLAINT ¶1.22:**

The following facts concerning Experian are based solely on Experian's own documents: Dispute Results Report No. 1056-5674-54 (October 10, 2024) and screenshots from usa.experian.com accessed February 23, 2026. Experian's liability is based entirely on its own independent conduct.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.23:**

Prior to Plaintiff's disputes, Experian's consumer report showed the following Dept. of Education/Nelnet student loan accounts with the following status and balances (per Experian's own "Before Dispute" data in Report No. 1011-1402-22, all as of September 2024):

Account 90000082676 (opened Jan 2010):  Status "Open/Never late. Deferred, payments begin Jan 2025." Recent Balance: $53,129.

Account 90000082676 (opened Aug 2009):  Status "Open/Never late. Deferred, payments begin Jan 2025." Recent Balance: $24,277.

Account 90000082676 (opened Jul 2012): Status "Open/Never late. Deferred, payments begin Jan 2025." Recent Balance: $13,584.

Account 90000082676 (opened Jul 2010): Status "Open/Never late. Deferred, payments begin Jan 2025." Recent Balance: $11,681.

Account 90000082676 (opened Feb 2009): Status "Open/Never late. Deferred, payments begin Jan 2025." Recent Balance: $5,848.

Additional Dept. of Education/Nelnet accounts with similar open/active status and balances ranging from approximately $4,250 to $52,867, for a combined reported balance exceeding $150,000.

10

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.24:**

The notation "Open/Never late. Deferred, payments begin Jan 2025" is a forward-looking, present-tense statement affirmatively representing: (a) the account is presently open and active; (b) the borrower has an obligation to begin making monthly payments in January 2025; and (c) the account is in good standing. Each of these representations is false. The accounts were legally extinguished by court order on August 27, 2024. This directly distinguishes Experian's reporting from the scenario addressed in the Court's January 12, 2026 dismissal order, where accounts were reported with discharge notations and $0 balances. These accounts bore no discharge notation and showed active balances with forward-looking payment obligations.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.25:**

Experian's own balance history data shows that the running account balances on these student loan accounts were being updated monthly throughout 2024—meaning Experian was treating these as live accounts with actively maintained balances, not historical closed accounts.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.26:**

Experian's Dispute Results Report groups the discharged accounts under the section heading "Your Potentially Negative Account Activity"—explicitly labeling discharged loans as derogatory. As of February 23, 2026, Experian's current consumer report continues to flag multiple discharged consumer accounts as carrying "POTENTIALLY NEGATIVE MONTHS"— a present-tense derogatory characterization of accounts that were legally extinguished through bankruptcy.

323918740v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**D. Credit Denials Caused by Experian's Reporting and Resulting Medical Damages**

**COMPLAINT ¶1.27:**

Experian's inaccurate reporting of Plaintiff's discharged student loan accounts as "Open/Never late. Deferred, payments begin Jan 2025" caused one documented credit denial confirmed by a denial letter expressly identifying Experian as the reporting agency.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.28:**

Plaintiff's loan applications were specifically sized to cover the anticipated cost of medically necessary dental implant surgery in the United States, estimated at approximately $40,000. All applications were submitted on September 30, 2024. LendingClub Patient Solutions/Comenity Capital Bank denied Plaintiff's application for medical financing based on Experian's consumer report. The denial letter cited: "The balances on your open accounts are too high in comparison to their loan amounts" and "The amount paid down on your open installment accounts is too low." Experian is expressly identified as the reporting agency. The credit score used was 565, pulled from Experian on September 30, 2024. These adverse factors are the direct consequence of Experian's inaccurate reporting of discharged student loan accounts as active open obligations with high outstanding balances. A true and correct copy of this denial letter is attached hereto as Exhibit K.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.29:**

Unable to obtain financing for the surgery in the United States, Plaintiff was compelled to travel to Turkey to undergo the procedure, incurring approximately $20,000 in out-of-pocket costs including the surgical procedure, dental implants, international airfare, and lodging. Because dental implant restoration is a staged medical process that necessarily requires follow-up treatment for permanent restoration, Plaintiff is required to return to Turkey for a second procedure and will incur an additional estimated $10,000 in procedure and international travel costs. The total actual

323918740v.1

economic damages attributable to Experian's violation are approximately $30,000 and do not include the significant emotional distress, physical hardship, and medical risk Plaintiff absorbed by undergoing major surgery abroad without her regular providers, under conditions she would not have chosen but for Experian's conduct. Plaintiff possesses a letter from the treating surgeon in Turkey confirming the procedure performed and the medical necessity of follow-up treatment, which Plaintiff will produce in discovery. Plaintiff additionally received a denial from Credible, which did not identify the consumer reporting agency used; that denial is referenced as further evidence of the impact of Plaintiff's suppressed creditworthiness on her ability to obtain medical financing during this period.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.30:**

The credit denials of September 30, 2024 did not prevent Plaintiff from accessing dental care alone. Plaintiff also requires surgical correction of a deviated septum, a condition that has been documented by treating ENT physicians and that is causing Plaintiff significant and ongoing medical complications. Plaintiff has obtained a surgical quote from an ENT surgeon and possesses clinical letters from treating ENT physicians confirming the medical necessity of the procedure. As of the date of this filing, Plaintiff has been unable to obtain financing for this surgery and the procedure remains unperformed, causing continued and worsening harm. Plaintiff's physical therapist has additionally provided a clinical opinion that Plaintiff's unresolved dental condition — itself a direct consequence of the financing barriers caused by Defendants' inaccurate reporting — is contributing to and exacerbating Plaintiff's carpal tunnel syndrome through jaw clenching, muscle guarding, and postural compensation. The credit reporting failures at issue in this case therefore caused harm extending well beyond the dental procedure itself, blocking access to multiple medically necessary interventions and producing cascading physical and psychological consequences that continue to this day. Plaintiff will produce all clinical letters, surgical quotes, and medical documentation in discovery.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**E. Experian's Disputes and Failed Reinvestigations**

**COMPLAINT ¶1.31:**

On October 11, 2024, Plaintiff submitted a formal written dispute to Experian via Certified Mail, postmarked October 12, 2024, to Experian Information Solutions, Inc., 475 Anton Blvd., Costa Mesa, CA 92626. The dispute letter identified all 17 inaccurately reported accounts and

enclosed copies of the General Discharge Order, the Student Loan Discharge Order, the BNC Notice Recipients, and examples of the disputed accounts. A true and correct copy of the dispute letter and certified mail receipt are attached hereto as Exhibit C.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.32:**

Experian's reinvestigation, upon information and belief, consisted solely of forwarding Plaintiff's dispute electronically through the e-OSCAR automated system to the furnisher and accepting the furnisher's automated response, without any independent review of the court orders Plaintiff provided. This does not constitute a reasonable reinvestigation when the consumer has submitted dispositive court documentation. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1157 (9th Cir. 2009) (a CRA's reasonable reinvestigation obligation requires consideration of all relevant information provided by the consumer, and reliance on an automated furnisher response is insufficient when the consumer has submitted documentary evidence directly contradicting the furnisher's position).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.33:**

Plaintiff's claims against Experian arise from Experian's inaccurate reporting at the time consumer reports were furnished to creditors in September and October 2024, and from Experian's failed reinvestigation following Plaintiff's certified mail dispute. Liability under 15 U.S.C. § 1681e(b) attaches at the moment an inaccurate report is furnished and used in a credit decision — subsequent correction does not undo the violation or eliminate the actual damages Plaintiff has already suffered, including the credit denials documented in Exhibits K and N and the $30,000 in economic damages caused by those denials. Notably, as of February 23, 2026, Experian's current report now shows the student loan accounts with Status "Discharged through Bankruptcy Chapter 7/Never late." This correction — which Experian was plainly capable of making at any time — was not applied for over sixteen months following Plaintiff's certified mail dispute transmitting the discharge orders. The belated correction confirms that the accurate reporting methodology was always available to Experian and that its prolonged failure to apply it was a deliberate or reckless choice supporting willful noncompliance. Meanwhile, as of the filing date of this complaint, Experian's current consumer report continues to display two LendingClub Corp accounts — Acct. 187399XXX (original balance $24,000) and Acct. 158069XXX (original balance $15,000) — as "Account charged off" rather than "Discharged through Bankruptcy Chapter 7," and continues to

323918740v.1

flag both accounts as carrying "5 potentially negative months." These accounts were included in and discharged through Plaintiff's Chapter 7 bankruptcy and should reflect discharge status. Their continued inaccurate reporting constitutes an ongoing violation independent of the student loan violations.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

### DEFENDANT-SPECIFIC ALLEGATIONS: TRANS UNION, LLC

**F. Trans Union's Materially Misleading Reporting of Student Loans as Active Obligations**

**COMPLAINT ¶1.34:**

The following facts concerning Trans Union are based solely on Trans Union's own documents: Trans Union Consumer Credit Report File Number 339664083, dated October 11, 2024, November 12, 2024, and Trans Union online dispute results screenshots captured December 12, 2024. Trans Union's liability is based entirely on its own independent conduct.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.35:**

As of Trans Union's consumer reports dated October 11, 2024, and November 12, 2024 (File Number 339664083), Trans Union's reports showed the following Dept. of Education/Nelnet student loan accounts with the following materially misleading status and balances, all post-discharge:

Account 90000082676 (opened Jan 7, 2010): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $53,122. Date Updated: 09/30/2024.

Account 90000082676 (opened Aug 27, 2009): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $24,277. Date Updated: 09/30/2024.

Account 90000082676 (opened Feb 10, 2009): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $25,330. Date Updated: 09/30/2024.

323918740v.1

Account 90000082676 (opened Jul 24, 2012): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $13,584. Date Updated: 09/30/2024.

Account 90000082676 (opened Jul 24, 2012): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $17,767. Date Updated: 09/30/2024.

Account 90000082676 (opened Jul 1, 2010): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $16,927. Date Updated: 09/30/2024.

Account 90000082676 (opened Jul 1, 2010): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $5,848. Date Updated: 09/30/2024.

Account 90000082676 (opened Aug 27, 2009): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $11,686. Date Updated: 09/30/2024.

Account 90000082676 (opened Feb 10, 2009): Pay Status: "Current; Paid or Paying as Agreed." Terms: "$0 per month; Deferred." Special Payment: "Payment deferred until 01/18/2025." Balance as of September 2024: $11,686. Date Updated: 09/30/2024.

Additional Dept. of Education/Nelnet accounts with similar active status and balances, for a combined reported balance exceeding $175,000 across all student loan accounts.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.36:**

The notation "Current; Paid or Paying as Agreed" with Terms "$0 per month; Deferred" and Special Payment "Payment deferred until 01/18/2025" is a forward-looking, present-tense representation affirmatively stating: (a) the account is presently open and active; (b) the borrower is currently in good standing on a live obligation; and (c) the borrower has a future payment obligation commencing January 18, 2025. Each of these representations is false. The accounts were legally extinguished by court order on August 27, 2024.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

16

**COMPLAINT ¶1.37:**

Trans Union's own balance data demonstrates that the balances on these student loan accounts were being actively updated and growing month-over-month through September 2024—after the August 27, 2024 discharge. Trans Union was treating these as live, actively accruing accounts, not closed historical accounts.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.38:**

Critically, none of the student loan tradelines in Trans Union's October 11, 2024 report contain any notation referencing bankruptcy, discharge, or the Student Loan Discharge Order. Unlike the consumer credit accounts (Apple Card, Capital One, Discover), which Trans Union did update to reflect ">Account Included in Bankruptcy<" and "CHAPTER 7 BANKRUPTCY" notations, Trans Union wholly failed to update any of the student loan accounts to reflect their discharged status. This selective updating demonstrates Trans Union's awareness of the discharge obligation as to consumer accounts while simultaneously and inexplicably failing to apply that same update to the student loan accounts.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.39:**

Additionally, Trans Union's report showed LendingClub Bank Account #18739 with Pay Status ">Sold; was Charged-off<" and Remarks "PURCHASED BY ANOTHER LENDER; PAID IN FULL/WAS A CHARGE OFF"—with no Chapter 7 bankruptcy notation, notwithstanding that this debt was included in and discharged through Plaintiff's bankruptcy. Trans Union's report showed LendingClub Bank Account #15806 with the identical Pay Status and Remarks, likewise containing no Chapter 7 bankruptcy notation.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

**G.    Trans Union's Denial of File Access and Failure to Provide Hard Copy**

**COMPLAINT ¶1.40:**

In addition to its reporting violations, Trans Union has independently violated 15 U.S.C. § 1681g by denying Plaintiff access to her consumer file and failing to provide a complete file disclosure upon request.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.41:**

Plaintiff has been denied access to her Trans Union consumer report through Trans Union's online portal. Despite repeated attempts, Trans Union's systems will not permit Plaintiff to access her own credit file electronically.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.42:**

In January 2026, Plaintiff submitted a written request to Trans Union for a hard copy of her complete consumer file disclosure, as is her right under 15 U.S.C. § 1681g. As of February 23, 2026, Trans Union has not responded to that request and has not provided any hard copy of Plaintiff's consumer file.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.43:**

On February 23, 2026, Plaintiff renewed her written request to Trans Union for a hard copy of her complete consumer file. Trans Union's failure to provide Plaintiff with access to her own consumer file—whether online or by hard copy—constitutes a separate and independent violation of 15 U.S.C. § 1681g, and further demonstrates Trans Union's pattern of disregard for its statutory obligations to the consumers whose data it maintains and sells.

323918740v.1

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**H.    Credit Denials Caused by Trans Union's Reporting**

**COMPLAINT ¶1.44:**

Trans Union's inaccurate reporting caused four documented credit denials, each confirmed by a denial letter expressly identifying Trans Union as the reporting agency. All loan applications were submitted on September 30, 2024; denial letters were received in October 2024. Taken together, these four denials by four unrelated lenders — all producing FICO scores in the 649-670 range and all citing the same adverse factors traceable to Trans Union's inaccurate student loan reporting — establish a clear and consistent pattern of material harm directly caused by Trans Union's violations.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.45:**

First, Customers Bank/Proceed Finance denied Plaintiff's application for a $35,000 medical loan. The $35,000 loan amount corresponded to a specific quote Plaintiff had received from a United States dental clinic for the implant procedure she required. The denial letter is dated October 1, 2024. Trans Union Consumer Relations, PO Box 1000, Chester, PA 19022, is expressly identified as the reporting agency. Credit score: 670, pulled from Trans Union on September 30, 2024. Adverse factors: "Serious delinquency, and public record or collection filed"; "Too many accounts with balances"; "Proportion of loan balances to loan amounts is too high"; and "Length of time revolving accounts have been established." A true and correct copy is attached hereto as Exhibit D. Second, Prosper Marketplace/WebBank denied Plaintiff's application. The denial letter is dated September 30, 2024. Trans Union is expressly identified as the reporting agency. Credit score: 649, pulled from Trans Union on September 30, 2024. The primary stated reason is "Bankruptcy in the last 12 months." Adverse score factors: "Time since derogatory public record or collection is too short"; "Too many trades reported 30 or more days delinquent in the last 24 months"; "Payment amounts insufficient relative to trade obligations"; and "Insufficient payment activity." A true and correct copy is attached hereto as Exhibit E. Third, Upgrade, Inc. denied Plaintiff's application. The denial letter is dated October 1, 2024. Trans Union Consumer Solutions is expressly identified as the reporting agency. Credit score: 670, pulled from Trans Union on October 1, 2024. Adverse factors: "Serious delinquency, and public record or collection filed"; "Too many accounts with balances"; "Proportion of loan balances to loan amounts is too high"; and "Length of time revolving accounts have been established." A true and correct copy is attached hereto as Exhibit F. Fourth, LendingClub Bank denied Plaintiff's application. The denial letter is

19

dated October 11, 2024. Trans Union is expressly identified as the reporting agency. Credit score: 649, pulled from Trans Union on September 30, 2024. The primary stated reason is "Bankruptcy reported in credit report." Adverse score factors: "Serious delinquency, and public record or collection filed"; "Proportion of loan balances to loan amounts is too high"; "Length of time revolving accounts have been established"; and "Too many accounts with balances." A true and correct copy is attached hereto as Exhibit N.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.46:**

The four Trans Union-caused denials establish that Trans Union's report was consistently and materially misleading to multiple unrelated creditors. Trans Union may argue that the denials were caused solely by the bankruptcy notation, which is a legitimately reportable event. That argument fails for two independent reasons. First, three of the four denials — Customers Bank, Prosper, and Upgrade — do not cite bankruptcy as a reason at all. They cite "Serious delinquency," "Too many accounts with balances," and "Proportion of loan balances to loan amounts is too high." These are not consequences of a bankruptcy notation. They are direct consequences of Trans Union's inaccurate reporting of discharged student loan accounts as active open obligations carrying hundreds of thousands of dollars in combined balances. A consumer whose discharged student loan accounts were correctly reported with zero balances and discharge notations would not have triggered these additional adverse factors regardless of the bankruptcy. Second, and most critically, the LendingClub Bank denial of October 11, 2024 cites "Bankruptcy reported in credit report" as its primary stated reason but then separately lists "Serious delinquency," "Proportion of loan balances to loan amounts is too high," and "Too many accounts with balances" as adverse credit score factors. These score factors are independent of and additive to the bankruptcy notation. They exist solely because Trans Union continued to report the discharged student loan accounts as active obligations with growing balances. The bankruptcy notation alone — on a report that correctly showed zero balances and discharge status on the student loan accounts — would not have generated these additional adverse score factors. Trans Union's inaccurate reporting therefore caused harm that was separate from, additive to, and independently actionable beyond any harm attributable to the bankruptcy notation itself.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

I.    **Trans Union's Disputes and Failed Reinvestigation**

**COMPLAINT ¶1.47:**

On October 12, 2024, Plaintiff transmitted a formal dispute letter to Trans Union Consumer Solutions, P.O. Box 2000, Chester, PA 19016-2000, via Certified Mail. The dispute letter specifically identified all 17 inaccurately reported accounts, including the student loan accounts and the LendingClub accounts, and enclosed copies of the General Discharge Order, the Student Loan Discharge Order, the BNC Notice Recipients, and examples of the disputed accounts. A true and correct copy of the dispute letter and certified mail receipt are attached hereto as Exhibit G.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.48:**

Trans Union's reinvestigation response is documented in Trans Union's online dispute portal, captured in screenshots dated December 12, 2024. For each of the student loan accounts, Trans Union's Remarks field shows the result of its reinvestigation as: "Completed investigation of FCRA dispute-consumer disagreed; PAYMENT DEFERRED."

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.49:**

This response is legally insufficient. Trans Union's reinvestigation: (a) left the Pay Status of each student loan account unchanged as "Current; Paid or Paying as Agreed"; (b) left the forward-looking "Payment deferred until 01/18/2025" notation in place; (c) left active, growing balances reported on each account; and (d) added no bankruptcy discharge notation to any of the student loan tradelines. The phrase "PAYMENT DEFERRED" appended to Trans Union's dispute response confirms that Trans Union was aware of the deferred status but failed to recognize or act upon the supervening August 27, 2024 court order extinguishing those obligations entirely.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

21

**COMPLAINT ¶1.50:**

Trans Union's reinvestigation, upon information and belief, consisted solely of forwarding Plaintiff's dispute electronically through the e-OSCAR automated system to the furnisher and accepting the furnisher's automated response—that payment was deferred—without any independent review of the court orders Plaintiff provided. Reliance on automated reinvestigation in the face of dispositive court documentation does not constitute a reasonable reinvestigation under the FCRA. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); Gorman, 584 F.3d at 1157 (a CRA cannot satisfy its reinvestigation obligation by mechanically forwarding a dispute to the furnisher when the consumer has provided specific documentary evidence supporting the dispute).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.51:**

The inadequacy of Trans Union's reinvestigation is further demonstrated by the contrast between its treatment of consumer credit accounts and student loan accounts: Trans Union did update the Apple Card, Capital One, and Discover accounts to reflect bankruptcy discharge status using the same court documentation, but failed to apply any similar update to the student loan accounts. This selective response establishes that Trans Union had the capability to update accounts upon receipt of discharge documentation and made a deliberate or reckless choice not to do so for the student loan accounts.

**COMPLAINT ¶1.52:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**J. Trans Union 's Denial of File Access and Failure to Provide Hard Copy**

**COMPLAINT ¶1.53:**

In addition to its reporting and reinvestigation violations, Trans Union has independently violated 15 U.S.C. § 1681g by denying Plaintiff meaningful access to her consumer file.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

**COMPLAINT ¶1.54:**

Plaintiff has been denied access to her Trans Union consumer report through Trans Union's online portal. Despite repeated attempts, Trans Union's systems will not permit Plaintiff to access her own credit file electronically.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.55:**

In January 2026, Plaintiff submitted an online request to Trans Union for a hard copy of her complete consumer file disclosure, as is her right under 15 U.S.C. § 1681g. As of February 23, 2026, Trans Union has not responded to that request and has not provided any hard copy of Plaintiff's consumer file.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.56:**

On February 23, 2026, Plaintiff renewed her online request to Trans Union for a hard copy of her complete consumer file. Trans Union's denial of online access combined with its failure to respond to Plaintiff's requests constitutes a separate and independent violation of 15 U.S.C. § 1681g, and deprives Plaintiff of her statutory right to monitor the accuracy of her own credit information—particularly important given Trans Union's demonstrated pattern of refreshing and extending inaccurate reporting.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

**DEFENDANT-SPECIFIC ALLEGATIONS:**
**EQUIFAX INFORMATION SERVICES, LLC**

**K. Equifax's Materially Misleading Reporting of Student Loans as Active Obligations**

**COMPLAINT ¶1.57:**

The following facts concerning Equifax are based solely on Equifax's own documents: the Equifax dispute letter dated October 11, 2024; the Equifax Dispute Results dated November 6, 2024 (Confirmation #4304538492); and the Equifax identity verification letter dated December 4, 2024. Equifax's liability is based entirely on its own independent conduct.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.58:**

Prior to Plaintiff's dispute, Equifax's consumer report showed the following Dept. of Education/Nelnet student loan accounts with the following materially misleading status and balances, all post-discharge. These accounts appeared on Equifax's report with Status "Pays As Agreed" and forward-looking Deferred Pay Start Dates, with no bankruptcy discharge notation:

Account *3891 (opened Jul 1, 2010): High Credit $6,000. Balance Amount: $11,732. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

Account *3791 (opened Jul 1, 2010): High Credit $4,250. Balance Amount: $5,873. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

Account *3691 (opened Jul 1, 2010): High Credit $7,889. Balance Amount: $17,009. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

Account *4391 (opened Aug 27, 2009): High Credit $8,500. Balance Amount: $11,737. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

Account *4091 (opened Jul 24, 2012): High Credit $12,061. Balance Amount: $17,823. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

Account *4491 (opened Feb 10, 2009): High Credit $12,000. Balance Amount: $25,439. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

323918740v.1

Account *3991 (opened Jul 24, 2012): High Credit $10,923. Balance Amount: $13,626. Status: Pays As Agreed. Terms Frequency: Deferred. Additional Information: Student Loan - Payment Deferred.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.59:**

Each of these accounts was reported with Status "Pays As Agreed"—a present-tense affirmative representation that the borrower is currently in compliance with an active payment obligation—and with Additional Information "Student Loan - Payment Deferred"—a forward-looking representation that payment obligations exist but are temporarily deferred. Neither notation reflected the legal reality that these obligations had been extinguished by court order on August 27, 2024. No bankruptcy discharge notation appeared on any of these student loan tradelines.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.60:**

In addition, Equifax's consumer report showed discharged consumer accounts (Apple Card, Capital One accounts, LendingClub accounts, Comety Bank/JCrew) with derogatory tradeline information inconsistent with their discharged status, including negative payment history data and derogatory characterizations that continued to harm Plaintiff's creditworthiness.

**ANSWER:**

Equifax denies reporting inaccurate information. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

25

**L. Equifax's Reinvestigation: Refreshed and Extended the Misrepresentation**

**COMPLAINT ¶1.61:**

On October 11, 2024, Plaintiff submitted a formal written dispute to Equifax Information Services LLC, P.O. Box 740256, Atlanta, GA 30374, via Certified Mail, postmarked October 12, 2024 from the Radio City Post Office, New York, NY 10019. The dispute letter identified all 17 inaccurately reported accounts, enclosed copies of the General Discharge Order, the Student Loan Discharge Order, the BNC Notice Recipients, and examples of the disputed accounts. A true and correct copy of the dispute letter and certified mail receipt are attached hereto as Exhibit H.

**ANSWER:**

Equifax admits that on October 18, 2024, it received a letter from Plaintiff concerning the Apple Card/GS Bank, Capital One, Comenity Bank, Discover Bank, Lending Club Bank, and Department of Education/Nelnet accounts, the contents of which speak for themselves. The allegations in this paragraph refer to a document, which speaks for itself, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the document referenced by this paragraph.

**COMPLAINT ¶1.62:**

On or about October 30, 2024, Equifax received an online dispute submission from Plaintiff concerning the same accounts.

**ANSWER:**

Equifax admits that on October 30, 2024, it received an online dispute from Plaintiff concerning the Department of Education/Nelnet and Discover Bank accounts.

**COMPLAINT ¶1.63:**

On November 6, 2024, Equifax issued Dispute Results (Confirmation #4304538492) reflecting its completed reinvestigation. All student loan accounts were marked "UPDATED." However, the nature of Equifax's "updates" reveals the fundamental inadequacy of its reinvestigation:

For Account *3891: Equifax updated the Balance, Date of Last Payment, Deferred Payment Start Date, and Additional Information—but left the Status as "Pays As Agreed," set the new Deferred Pay Start Date to 12/01/2025, and retained "Student Loan - Payment Deferred" as Additional Information.

For Account *3791: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025, Additional Information remains "Student Loan - Payment Deferred."

For Account *3691: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025.

For Account *4391: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025.

For Account *4091: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025.

For Account *4491: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025.

For Account *3991: Same pattern—balance updated, Status remains "Pays As Agreed," Deferred Pay Start Date set to 12/01/2025.

**ANSWER:**

Equifax admits that on November 6, 2024, it sent Plaintiff reinvestigation results, the contents of which speak for themselves. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶1.64:**

Equifax's reinvestigation did not correct a single student loan account to reflect bankruptcy discharge status. Instead, by updating the Deferred Pay Start Date to 12/01/2025, Equifax actively inserted a new, forward-looking false statement into Plaintiff's consumer file—affirmatively representing that payment obligations on these legally extinguished debts would resume on December 1, 2025. Equifax's reinvestigation made Plaintiff's file more misleading, not less.

**ANSWER:**

Equifax admits that on November 6, 2024, it sent Plaintiff reinvestigation results, the contents of which speak for themselves. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶1.65:**

The inadequacy of Equifax's reinvestigation is conclusively demonstrated by its own treatment of the Discover Bank account (Account *1590): Equifax's November 6, 2024 Dispute Results show that for Account *1590, Equifax updated the account to Status "Account Included in Bankruptcy" with Additional Information "Bankruptcy Chapter 7, Bankruptcy Discharged." Equifax therefore knew precisely how to correctly report a discharged account and had both the capability and the court documentation to apply that same treatment to the student loan accounts—

27

but deliberately or recklessly chose not to do so. This selective application is powerful evidence of reckless disregard for FCRA obligations.

**ANSWER:**

Equifax admits that on November 6, 2024, it sent Plaintiff reinvestigation results, the contents of which speak for themselves. Equifax denies the remaining allegations in this paragraph.

**COMPLAINT ¶1.66:**

Equifax's reinvestigation, upon information and belief, consisted solely of forwarding Plaintiff's dispute electronically through the e-OSCAR automated system to the furnisher (Nelnet/Dept. of Education) and accepting the furnisher's automated response—that payment was deferred until December 2025—without any independent review of the court orders Plaintiff provided establishing that the underlying obligations had been legally extinguished. See Cushman v. Trans Union Corp., 115 F.3d 220, 225 (3d Cir. 1997); Johnson v. MBNA Am. Bank, NA, 357 F.3d 426, 431 (4th Cir. 2004); Gorman, 584 F.3d at 1157. Equifax's reinvestigation is particularly egregious because it not only failed to correct the student loan accounts but actively refreshed the misrepresentation by extending the deferred payment start date—the precise opposite of what a reasonable reinvestigation of court-ordered discharge documentation would produce.

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Equifax denies the remaining allegations in this paragraph.

**M. Equifax's December 4, 2024 Letter: Obstruction After Completed Reinvestigation**

**COMPLAINT ¶1.67:**

On December 4, 2024—nearly one month after completing its reinvestigation and issuing results on November 6, 2024—Equifax sent Plaintiff a letter claiming it "was unable to locate a credit file" in its database and demanding that Plaintiff provide identity verification documents, including a Social Security card or W-2 and a document verifying her current address. The letter directed Plaintiff to submit these documents to Equifax Information Services LLC, P.O. Box 105069, Atlanta, GA 30348-5069.

**ANSWER:**

Equifax admits that on December 4, 2024, it sent Plaintiff a letter, the contents of which speak for themselves.

323918740v.1

**COMPLAINT ¶1.68:**

This letter is facially inconsistent with Equifax's November 6, 2024 reinvestigation results, which were issued under the same name and address (330 W 56th St Apt 23M, New York, NY 10019-4236) without any assertion that Plaintiff's identity could not be verified. Equifax located Plaintiff's credit file, investigated her dispute, and issued an eight-page Dispute Results report on November 6, 2024—then one month later claimed it could not locate a file at all. This conduct constitutes obstruction of Plaintiff's statutory rights and is further evidence of Equifax's reckless disregard for its FCRA obligations.

**ANSWER:**

Equifax admits that on November 6, 2024, it sent Plaintiff reinvestigation results, the

contents of which speak for themselves. Equifax denies the remaining allegations in this paragraph.

### DAMAGES COMMON TO ALL DEFENDANTS

**COMPLAINT ¶1.69:**

Experian's inaccurate reporting, Trans Union's inaccurate reporting, and Equifax's inaccurate reporting each independently caused Plaintiff to be denied credit. All of Plaintiff's loan applications were submitted on September 30, 2024; denial letters were received in October 2024. Each denial letter cited the specific derogatory information furnished by the respective defendant as the basis for denial, with the reporting agency expressly identified in each letter. Plaintiff additionally received a denial from Credible that did not identify the reporting agency; that denial is referenced as further corroboration of the impact of each defendant's inaccurate reporting on Plaintiff's overall creditworthiness.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶1.70:**

Experian's inaccurate reporting of discharged student loan accounts as active open obligations with forward-looking payment dates caused one documented medical financing denial: LendingClub Patient Solutions/Comenity Capital Bank denied Plaintiff's application citing open account balances as too high — the direct consequence of Experian's continued reporting of legally extinguished obligations as active accounts. Unable to obtain financing in the United States, Plaintiff was compelled to travel to Turkey to undergo necessary dental implant surgery, incurring approximately $20,000 in out-of-pocket costs including the surgical procedure, dental implants, international airfare, and lodging. Because dental implant restoration is a staged medical process requiring follow-up treatment for permanent restoration, Plaintiff must return to Turkey for a second procedure at an estimated additional cost of $10,000. The total actual economic damages attributable to Experian's violation are approximately $30,000, exclusive of the significant emotional distress, physical hardship, and medical risk Plaintiff absorbed by undergoing major surgery abroad without her regular providers. Plaintiff possesses a letter from the treating surgeon

in Turkey confirming the procedure performed and the medical necessity of follow-up treatment, which Plaintiff will produce in discovery.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.71:**

Trans Union's inaccurate reporting caused four documented credit denials between September 30 and October 11, 2024 — by Customers Bank/Proceed Finance, Prosper/WebBank, Upgrade Inc., and LendingClub Bank — each of whom expressly identified Trans Union as the reporting agency. The cumulative denial of medical financing, personal loan access, and other credit opportunities during this period constitutes substantial actual damages directly and proximately caused by Trans Union's violations. Independently, Trans Union's refusal to provide Plaintiff with online access to her consumer file and its failure to respond to Plaintiff's hard copy requests have prevented Plaintiff from identifying the full scope of Trans Union's inaccurate reporting and taking corrective action, compounding the harm flowing from the underlying violations.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the

allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.72:**

Equifax's active refreshing of forward-looking false payment obligations through its November 6, 2024 reinvestigation — inserting new Deferred Pay Start Dates of 12/01/2025 on legally extinguished debts — has continuously and materially misrepresented Plaintiff's creditworthiness to any creditor accessing her Equifax file. Equifax's failure to provide a hard copy of Plaintiff's consumer file despite written requests has independently harmed Plaintiff by preventing her from identifying and disputing the full extent of inaccuracies in her Equifax file, in violation of her statutory rights under 15 U.S.C. § 1681g.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶1.73:**

The credit scores reflected in the denial letters illuminate the independent harm caused by each defendant's reporting choices beyond whatever impact the bankruptcy alone produced. Experian's score of 565 and Trans Union's scores of 649-670 were generated approximately six months after entry of the General Discharge Order on March 27, 2024. A consumer file correctly

323918740v.1

reflecting discharged accounts with zero balances and discharge notations would have begun showing meaningful score recovery during that period. The continued suppression of Plaintiff's scores at these levels six months post-discharge is direct evidence that the inaccurate student loan reporting — not the bankruptcy itself — was actively holding Plaintiff's scores below what they would otherwise have been. Equally significant is the approximately 80-100 point gap between Experian's score of 565 and Trans Union's scores of 649-670 on the same consumer on the same day, September 30, 2024. This discrepancy cannot be explained by any underlying fact about Plaintiff's creditworthiness — both agencies were evaluating the same consumer on the same date. The gap reflects instead the direct impact of each defendant's independent and divergent reporting methodology on Plaintiff's measurable credit profile, and constitutes quantitative evidence that each defendant's specific reporting choices caused independent, measurable harm to Plaintiff's credit standing.

**ANSWER:**

Equifax denies any allegations in this paragraph to the extent the relate to Equifax. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.74:**

Plaintiff suffered significant emotional distress, anxiety, humiliation, and loss of sleep as a result of each Defendant's inaccurate reporting, the resulting credit denials, and the physical and emotional hardship of undergoing major surgery abroad without her regular providers, in a foreign country, under conditions she would not have chosen but for each Defendant's conduct. Each Defendant's inaccurate reporting independently contributed to Plaintiff's emotional distress. Emotional distress damages are recoverable as actual damages under the FCRA, and courts have upheld significant awards based on detailed testimony from the consumer alone. See Guimond v. Trans Union Credit Info. Co., 45 F.3d 1329, 1333 (9th Cir. 1995) (recognizing that emotional distress is compensable as actual damages under the FCRA); Cortez v. Trans Union, LLC, 617 F.3d 688, 719-21 (3d Cir. 2010) (affirming $50,000 emotional distress award based on plaintiff's testimony regarding anxiety, humiliation, weight loss, and sleep disruption, and holding that if a jury accepts testimony of a plaintiff that establishes an injury without corroboration, the plaintiff should be allowed to recover under the FCRA); Stevenson v. TRW Inc., 987 F.2d 288, 296-98 (5th Cir. 1993) (affirming $30,000 in actual damages based on mental anguish arising from FCRA violations). Moreover, a defendant may not escape liability for the harm caused by its own inaccurate reporting merely because other negative information such as a bankruptcy notation independently affected the plaintiff's credit. See Boggio v. USAA Fed. Sav. Bank, 696 F.3d 611, 621 (6th Cir. 2012). Here, as the five documented denial letters establish, three of the four TransUnion-caused denials and the Experian-caused denial cite adverse factors that are direct and independent consequences of each defendant's inaccurate student loan reporting, not consequences of the bankruptcy notation itself. Plaintiff's emotional distress is not speculative. Plaintiff's licensed clinical therapist, who has been providing treatment since April 2024, has documented clinical diagnoses of Generalized Anxiety Disorder (ICD-10: F41.1) and Major Depressive Disorder (ICD-10: F32.9), and has provided a written clinical opinion causally linking the

31

September 30, 2024 credit denials and the resulting barriers to medical care to a marked decline in Plaintiff's mental health, including panic attacks, interrupted sleep, social withdrawal, and chronic hopelessness. Plaintiff will produce this clinical documentation in discovery.

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or takes out of context the contents of the case law referenced by this paragraph. Equifax denies the remaining allegations in this paragraph.

## V. CAUSES OF ACTION

**COUNT I — AS TO EXPERIAN ONLY**

**Violation of 15 U.S.C. § 1681e(b) — Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**COMPLAINT ¶1.75:**

Plaintiff repeats and realleges the Experian-specific allegations in Sections I, IV(A)-(B), and IV(C)-(E) as though fully set forth herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶1.76:**

Experian prepared and published consumer reports affirmatively and falsely stating that student loan accounts were open with active balances and that payments would begin in January 2025—when those obligations had been legally extinguished by court order on August 27, 2024.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.77:**

These reports were materially misleading under Shimon, 994 F.3d at 92; Saunders, 526 F.3d at 148; and Bibbs, 43 F.4th at 342, as confirmed by the documented denial from LendingClub

32

323918740v.1

Patient Solutions/Comenity Capital Bank (Exhibit K), expressly citing Experian data, a score of 565, and open account balances as too high — the direct consequence of Experian's inaccurate reporting of discharged student loan accounts as active open obligations with forward-looking payment dates.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.78:**

Experian failed to follow reasonable procedures to assure maximum possible accuracy, including: (a) failing to update discharged student loan accounts after receiving the Student Loan Discharge Order; (b) failing to comply with Metro 2® standards; (c) reporting open, active statuses and future payment obligations on legally extinguished debts; and (d) placing discharged accounts in "Potentially Negative" categories.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.79:**

Experian's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COUNT II — AS TO EXPERIAN ONLY**

**Violation of 15 U.S.C. § 1681i(a) — Failure to Conduct a Reasonable Reinvestigation**

**COMPLAINT ¶1.80:**

Plaintiff repeats and realleges the Experian-specific allegations as though fully set forth herein.

323918740v.1

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶1.81:**

Plaintiff disputed the accuracy of information in her Experian consumer file and provided court documentation—specifically, bankruptcy discharge orders—supporting her disputes. Experian's response of "Completed investigation of FCRA dispute—consumer disagrees" in the face of a federal court order extinguishing the reported debt demonstrates that Experian's reinvestigation was illusory.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.82:**

Experian failed to conduct a reasonable reinvestigation and instead relied solely on automated e-OSCAR verification without independent review of the court orders. See Cushman, 115 F.3d at 225; Johnson, 357 F.3d at 431; Gorman, 584 F.3d at 1157; Henson v. CSC Credit Servs., 29 F.3d 280, 286-87 (7th Cir. 1994).

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.83:**

Experian's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

323918740v.1

**COUNT III — AS TO TRANS UNION ONLY**

**Violation of 15 U.S.C. § 1681e(b) — Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**COMPLAINT ¶1.84:**

Plaintiff repeats and realleges the Trans Union-specific allegations in Sections I, IV(A)-(B), and IV(F)-(I) as though fully set forth herein.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.85:**

Trans Union prepared and published consumer reports affirmatively and falsely stating that student loan accounts were current active obligations with Pay Status "Current; Paid or Paying as Agreed" and forward-looking payment obligations deferred until January 18, 2025—when those obligations had been legally extinguished by court order on August 27, 2024.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.86:**

These reports were materially misleading under Shimon, 994 F.3d at 92; Saunders, 526 F.3d at 148; and Bibbs, 43 F.4th at 342, as confirmed by four documented denials all expressly identifying Trans Union as the reporting agency: Customers Bank/Proceed Finance (Exhibit D); Prosper/WebBank (Exhibit E); Upgrade Inc. (Exhibit F); and LendingClub Bank (Exhibit N). The LendingClub Bank denial is particularly significant because it cited "Bankruptcy reported in credit report" as its primary reason while simultaneously listing "Serious delinquency" and "Too many accounts with balances" as adverse score factors — proving that Trans Union's inaccurate student loan reporting caused independent, additive harm beyond the bankruptcy notation itself. See Boggio, 696 F.3d at 621.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

35

**COMPLAINT ¶1.87:**

Trans Union failed to follow reasonable procedures to assure maximum possible accuracy, including: (a) failing to update discharged student loan accounts while simultaneously updating consumer credit accounts with the same documentation; (b) failing to comply with Metro 2® standards; (c) reporting active, current-status obligations on legally extinguished debts with forward-looking payment dates; and (d) failing to add any discharge notation to student loan tradelines.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.88:**

Trans Union's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COUNT IV — AS TO TRANS UNION ONLY**

**Violation of 15 U.S.C. § 1681i(a) — Failure to Conduct a Reasonable Reinvestigation**

**COMPLAINT ¶1.89:\**

Plaintiff repeats and realleges the Trans Union-specific allegations as though fully set forth herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶1.90:**

Plaintiff disputed the accuracy of information in her Trans Union consumer file and provided court documentation establishing the legal extinguishment of the reported debts. Trans Union's reinvestigation response of "Completed investigation of FCRA dispute-consumer disagreed; PAYMENT DEFERRED" demonstrates an illusory reinvestigation. Trans Union left every student loan account unchanged as "Current; Paid or Paying as Agreed" with forward-

36

looking payment obligations, active balances, and no discharge notation, while updating consumer credit accounts using the same documentation.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.91:**

Trans Union's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COUNT V — AS TO TRANS UNION ONLY**

**Violation of 15 U.S.C. § 1681g — Failure to Provide File Disclosure**

**COMPLAINT ¶1.92:**

Plaintiff repeats and realleges the Trans Union-specific allegations in Section IV(G) as though fully set forth herein.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.93:**

Under 15 U.S.C. § 1681g, upon request, a consumer reporting agency must clearly and accurately disclose to a consumer all information in the consumer's file at the time of the request.

**ANSWER:**

Equifax states that the statutory provisions referenced by this paragraph speak for themselves, and Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes,

37

misquotes, or takes out of context the contents of the statutory provisions referenced by this paragraph.

**COMPLAINT ¶1.94:**

Plaintiff has been denied access to her Trans Union consumer report through Trans Union's online portal. Plaintiff submitted a request for a hard copy of her complete consumer file in January 2026. As of the date of this filing, Trans Union has not provided a hard copy of Plaintiff's consumer file in response to that request. Plaintiff renewed her request on February 23, 2026.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.95:**

Trans Union's failure to provide Plaintiff with access to her consumer file upon request constitutes a violation of 15 U.S.C. § 1681g. Trans Union's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COUNT VI — AS TO EQUIFAX ONLY**

**Violation of 15 U.S.C. § 1681e(b) — Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

**COMPLAINT ¶1.96:**

Plaintiff repeats and realleges the Equifax-specific allegations in Sections I, IV(A)-(B), and IV(J)-(M) as though fully set forth herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

323918740v.1

**COMPLAINT ¶1.97:**

Equifax prepared and published consumer reports showing discharged student loan accounts with Status "Pays As Agreed," active balances, and forward-looking Deferred Pay Start Dates—affirmatively representing future payment obligations on legally extinguished debts—while simultaneously reporting Discover Bank's discharged account correctly as "Account Included in Bankruptcy." Equifax's selective application of the correct discharge notation is direct evidence of its failure to follow reasonable procedures.

**ANSWER:**

Equifax denies reporting inaccurate information and denies that it violated the FCRA or any other law. Equifax lacks knowledge or information sufficient to form a belief regarding the remaining allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.98:**

Equifax's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COUNT VII — AS TO EQUIFAX ONLY**

**Violation of 15 U.S.C. § 1681i(a) — Failure to Conduct a Reasonable Reinvestigation**

**COMPLAINT ¶1.99:**

Plaintiff repeats and realleges the Equifax-specific allegations as though fully set forth herein.

**ANSWER:**

Equifax incorporates the preceding answers as though the same were set forth at length herein.

**COMPLAINT ¶1.100:**

Plaintiff disputed the accuracy of information in her Equifax consumer file and provided court documentation supporting her disputes. Equifax's reinvestigation not only failed to correct the student loan accounts—it actively refreshed and extended the misrepresentation by inserting new forward-looking Deferred Pay Start Dates of 12/01/2025 on legally extinguished obligations.

323918740v.1

Equifax demonstrated it knew the correct update procedure by applying it to Discover Bank while refusing to apply it to student loan accounts.

**ANSWER:**

Equifax denies the allegations in this paragraph.

**COMPLAINT ¶1.101:**

Equifax's violations were negligent and/or willful within the meaning of 15 U.S.C. §§ 1681n and 1681o.

**ANSWER:**

Equifax denies the allegations in this paragraph.

## VI. WILLFULNESS

**COMPLAINT ¶1.102:**

Reckless disregard of statutory duties constitutes willfulness under the FCRA. Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 57 (2007).

**ANSWER:**

Equifax states that the case law referenced by this paragraph speak for themselves, and

Equifax denies the allegations to the extent Plaintiff misstates, mischaracterizes, misquotes, or

takes out of context the contents of the case law referenced by this paragraph.

**COMPLAINT ¶1.103:**

EXPERIAN'S WILLFULNESS is supported by: (a) receipt of the Student Loan Discharge Order and continued reporting of those accounts as "Open/Never late. Deferred, payments begin Jan 2025" for over sixteen months; (b) response of "Completed investigation—consumer disagrees" to a consumer who submitted a federal court order; (c) deviation from Metro 2® standards; (d) prior FCRA litigation involving materially identical post-discharge reporting failures; (e) the fact that Experian has now corrected the student loan accounts to show "Discharged through Bankruptcy Chapter 7" — proving the accurate reporting methodology was always within Experian's capability and that its sixteen-month failure to apply it after receiving the discharge orders was deliberate or reckless; (f) continued inaccurate reporting of two LendingClub accounts as "charged off" rather than discharged through bankruptcy as of the filing date; (g) continued "potentially negative months" labeling on discharged LendingClub accounts as of the filing date; (h) causation of a documented credit denial — LendingClub Patient Solutions/Comenity Capital Bank — citing open account balances as too high in direct response to Experian's inaccurate reporting, confirming that Experian's failures were not merely procedural but concretely harmful; and (i) receipt of a formal complaint filed by Plaintiff with the Consumer Financial Protection

323918740v.1

Bureau on October 17, 2024 (CFPB Complaint No. 241017-16537147), to which Experian had not responded as of October 18, 2024 — demonstrating that Experian's failure to address Plaintiff's dispute was not an isolated oversight but part of a broader pattern of disregard for its obligations to consumers and regulators alike.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.104:**

TRANS UNION'S WILLFULNESS is supported by: (a) receipt of the Student Loan Discharge Order via certified mail and continued reporting of all student loan accounts as "Current; Paid or Paying as Agreed" with forward-looking payment obligations; (b) response of "Completed investigation of FCRA dispute-consumer disagreed; PAYMENT DEFERRED" confirming TransUnion reviewed deferred status but failed to recognize the supervening discharge; (c) deviation from Metro 2® standards; (d) selective updating that applied bankruptcy discharge notations to consumer credit accounts but not to student loan accounts; (e) prior FCRA litigation involving materially identical post-discharge reporting failures; (f) denial of Plaintiff's statutory right to access her own consumer file despite requests in January 2026 and February 2026; (g) causation of four documented credit denials to the same consumer — by four unrelated lenders all producing FICO scores of 649-670 and all citing the same adverse factors traceable to Trans Union's inaccurate student loan reporting — including a denial expressly citing "Bankruptcy reported in credit report" while simultaneously penalizing Plaintiff for "Serious delinquency" and "Too many accounts with balances," proving that Trans Union's inaccurate reporting caused compounding, additive harm beyond the bankruptcy notation alone; and (h) receipt of a formal complaint filed by Plaintiff with the Consumer Financial Protection Bureau on October 17, 2024 (CFPB Complaint No. 241017-16536700), which Trans Union resolved with a status of "Closed — Other" — the CFPB's designation for responses that do not satisfactorily resolve the consumer's complaint — further demonstrating Trans Union's pattern of providing inadequate responses to documented disputes regardless of the forum in which those disputes are raised.

**ANSWER:**

Equifax lacks knowledge or information sufficient to form a belief regarding the allegations in this paragraph and, on that basis, denies the allegations contained therein.

**COMPLAINT ¶1.105:**

EQUIFAX'S WILLFULNESS is supported by: (a) receipt of certified mail dispute with court orders and continued inaccurate reporting; (b) reinvestigation that actively refreshed the misrepresentation by inserting new forward-looking Deferred Pay Start Dates of 12/01/2025 on legally extinguished debts; (c) selective application of the correct discharge notation to Discover Bank while refusing to apply it to student loan accounts — demonstrating awareness of the correct

41

procedure and deliberate or reckless failure to follow it; (d) issuance of a December 4, 2024 letter claiming inability to locate a credit file one month after completing an eight-page reinvestigation of that same file; (e) deviation from Metro 2® standards; (f) prior FCRA litigation involving materially identical post-discharge reporting failures; and (g) receipt of a formal complaint filed by Plaintiff with the Consumer Financial Protection Bureau on October 17, 2024 (CFPB Complaint No. 241017-16537146), to which Equifax formally responded while simultaneously conducting a reinvestigation that actively refreshed the inaccurate reporting by inserting new forward-looking payment dates — demonstrating that Equifax's responses to regulatory and consumer complaints were procedurally compliant in form while substantively inadequate in effect.

**ANSWER:**

Equifax denies the allegations in this paragraph.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mirela Hintermaier respectfully requests that the Court enter judgment in her favor and against each Defendant separately as follows:

A.  Declaring that each Defendant independently violated the FCRA as alleged herein, with liability assessed separately as to each Defendant;

B.  Awarding Plaintiff actual damages against each Defendant separately pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1), in amounts to be determined at trial, including but not limited to: (i) against Experian, approximately $30,000 in economic damages representing the documented cost of medical treatment abroad ($20,000 already incurred for the dental implant surgery in Turkey, plus $10,000 in certain future costs for follow-up treatment required for permanent restoration), caused by Experian's inaccurate reporting and the resulting credit denial by LendingClub Patient Solutions/Comenity Capital Bank; (ii) against Trans Union, actual damages in an amount to be determined at trial, including lost credit opportunities flowing from four documented denials by four separate lenders — Customers Bank/Proceed Finance, Prosper/WebBank, Upgrade Inc., and LendingClub Bank — each expressly identifying Trans Union as the reporting agency, including the denial of a $35,000 medical loan corresponding to a specific domestic clinic quote, illustrating the magnitude of credit access lost as a direct consequence of Trans Union's inaccurate reporting; (iii) against Equifax, actual damages in an amount to be determined at trial, including lost credit opportunities and ongoing harm flowing from Equifax's continued and actively refreshed inaccurate reporting and its failure to provide Plaintiff with a complete file disclosure upon written request; and (iv) against all Defendants jointly and severally for overlapping harm, and against each Defendant independently for non-overlapping harm, compensation for emotional distress, anxiety, humiliation, and loss of sleep caused by each Defendant's independent violations, in amounts supported by Plaintiff's testimony and to be determined at trial;

42

C.    Awarding Plaintiff statutory damages of not less than $100 and not more than $1,000 per willful violation against each Defendant separately pursuant to 15 U.S.C. § 1681n(a)(1)(A);

D.    Awarding Plaintiff punitive damages against each Defendant separately pursuant to 15 U.S.C. § 1681n(a)(2) in an amount sufficient to deter each Defendant from future violations;

E.    Awarding Plaintiff the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F.    In the event of trial, instructing the jury to assess liability and damages as to each Defendant separately and independently; and

G. Granting such other and further relief as the Court deems just and proper.

**ANSWER:**

Equifax denies any and all allegations in this paragraph, denies that it violated the FCRA or any other law, and denies that Plaintiff is entitled to any relief whatsoever by the Complaint.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P.38(b).

**ANSWER:**

Equifax admits that Plaintiff demands a jury trial on all triable issues. Equifax objects to a jury trial on any claims for equitable relief and all other issues as to which a jury is not permitted as of right or as a matter of law.

**AFFIRMATIVE AND OTHER DEFENSES**

Without assuming the burden of proof where it otherwise rests with Plaintiff, Equifax asserts the following affirmative and other defenses to the Complaint:

**FIRST DEFENSE**

Equifax is not subject to general or specific jurisdiction in this Court as to the claims brought by Plaintiff against it. Equifax is neither incorporated nor headquartered in New York,

43

and the conduct giving rise to Plaintiff's claim occurred outside of New York and was not targeted at New York.

## SECOND DEFENSE

At all pertinent times, Equifax maintained reasonable procedures to assure maximum possible accuracy in its credit report(s).

## THIRD DEFENSE

At all relevant times herein, the Plaintiff's alleged damages, which Equifax denies exist, were aggravated by the failure of Plaintiff to use reasonable diligence to mitigate the same. Therefore, Plaintiff's recovery, if any, should be barred or decreased by reason of their failure to mitigate alleged losses.

## FOURTH DEFENSE

Subject to proof through discovery, Plaintiff's causes of action are barred, in whole or in part, by the statute of limitations and/or statute of repose.

WHEREFORE, having fully answered or otherwise responded to the allegations in Plaintiff's Complaint, Equifax prays that:

(1)     Plaintiff's Complaint be dismissed in its entirety and with prejudice as to Equifax, with all costs taxed against Plaintiff;

(2)     it be dismissed as a party to this action; and

(3)     it recover such other and additional relief as the Court deems just and appropriate.

323918740v.1

45

Dated: June 18, 2026

Respectfully submitted,

SEYFARTH SHAW LLP

By: _/s/ Heather H. Sharp_

Heather H. Sharp, NY Bar No. 4590659
hsharp@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia  30309-3958
Telephone:  (404) 885-1500
Facsimile:  (404) 892-7056

_Counsel for Defendant_
_Equifax Information Services LLC_

323918740v.1

**CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2026, I presented the foregoing EQUIFAX INFORMATION SERVICES LLC'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE AND OTHER DEFENSES with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A copy has also been sent via U.S. Mail to the following:

> Mirela Hintermaier, *plaintiff pro se*
> 330 W. 56th Street, Apt. 23M
> New York, NY  10019

> /s/ Heather H. Sharp
> Heather H. Sharp
> *Counsel for Defendant*
> *Equifax Information Services LLC*

323918740v.1